UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No. 11-164 (KSH) |
| ANSELMO GENOVESE | : | |
| _____ | x | |
| UNITED STATES OF AMERICA | : | |
| v | : | Criminal No 11-165 (KSH) |
| ANSELMO GENOVESE, et al. | : | |
| | : | |
| _____ | x | |

_____

**GOVERNMENT'S OPPOSITION TO THE PRETRIAL
MOTIONS FILED BY DEFENDANTS SEEKING
CONSOLIDATION, SEVERANCE, AND A BILL OF
PARTICULARS**

_____

Office of the U.S. Attorney
970 Broad Street
Newark, New Jersey  07102
(973) 645-2700

On the Brief:
Leslie Faye Schwartz
Assistant U.S. Attorney

## TABLE OF CONTENTS

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.    DEFENDANTS' REQUEST FOR A BILL OF PARTICULARS SHOULD BE
      DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..   10

II.   DEFENDANT ANSELMO GENOVESE'S  REQUEST FOR CONSOLIDATION OF
      THE TWO INDICTMENTS SHOULD BE DENIED AS IT WOULD
      VIOLATE THE RULES GOVERNING JOINDER  . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.  DEFENDANT JANEEN ZINNA'S MOTION FOR SEVERANCE SHOULD BE
      DENIED BECAUSE SHE HAS NOT MET HER HEAVY BURDEN OF SHOWING
      A CLEAR AND SUBSTANTIAL PREJUDICE TO A SPECIFIC
      TRIAL RIGHT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . .   22

      A.    The Legal Standards Governing Severance Under Rule 14(a) . . . . . . .   23

      B.    Defendant Janeen Zinna has failed to Demonstrate that her
            Husband's Alleged Willingness to Testify at a Separate Trial Warrants
            Severance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

      C.    Defendant Janeen Zinna has failed to Demonstrate that she is
            Entitled to Severance Due to a Conflict between her Right to
            Testify and Spousal Privilege Not to Testify Against Her
            Husband . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

IV.   THE GOVERNMENT'S REQUEST FOR RECIPROCAL DISCOVERY
      SHOULD BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . .   32

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

## STATEMENT OF FACTS

### U.S. v. Anselmo Genovese (Crim. No. 11-164)

In late 2006/early 2007, 160 Broadway Concrete Corporation ("Broadway Concrete")- - a company that historically had engaged in New York construction projects - -  was hired as a subcontractor on a high-rise construction project located at 77 Hudson Street, Jersey City, New Jersey ("77 Hudson Street").  The company desired to hire laborers with whom they had a history in order to make the project go more quickly and smoothly.  Unfortunately, the majority of these laborers were members of Laborer's International Union of North America ("LIUNA") locals based in New York, and Broadway Concrete was subject to a collective bargaining agreement ("CBA") which required the company to employ laborers referred to work through New Jersey LIUNA Local 325, headquartered in Jersey City, New Jersey.

Defendant Anselmo Genovese was the Project Manager for Broadway Concrete at 77 Hudson Street.   In order to encourage New York laborers to work at 77 Hudson Street, defendant Anselmo Genovese caused Broadway Concrete to send fringe benefit funds earned by the New York laborers on the project to the Cement and Concrete Workers District Council Fringe Benefit Funds for the New York region rather than to Local 325 for remittance to the New Jersey benefit funds, as required by the CBA. Further, in order to conceal the large number of New York laborers working on the project (which greatly exceeded the number of Local 325 laborers) and the fact that benefit contributions which were due and owing were not being properly transmitted to

the New Jersey Benefit Funds, defendant Anselmo Genovese caused the names and number of hours worked by the New York laborers to be excluded from the Local 325 shop steward reports for 77 Hudson Street.   Finally, in exchange for permitting Broadway Concrete to evade its CBA, defendant Anselmo Genovese agreed to pay L.M., the Business Manager of Local 325, $1,000 a week during the course of the project.   As part of that agreement, defendant Anselmo Genovese paid a total of $8,000 in unlawful payments to L.M. between the spring and fall of 2007.

As a consequence of this criminal conduct, defendant Anselmo Genovese is charged in Crim. No. 11-164 with one count of conspiracy to make unlawful labor payments and embezzle employee benefit funds, and two counts of making an unlawful labor payment.   No other individuals are charged in this Indictment.

**United States v. Anselmo Genovese, et al.  (Crim. No. 11-165**)

This Indictment contains thirty-three counts.  Anselmo Genovese is charged in this indictment along with defendants Pasquale Zinna, Janeen Zinna, Eric Haynberg, Rocco Mazzaferro, and Vincenzo Genovese.

**Conspiracy (18 U.S.C. § 1349) (Ct 1) and Wire Fraud (18 U.S.C. § 1343)(Cts 2-12)**
(Scheme to Defraud Broadway Concrete - - Rocco Mazzaferro No-Show Job)

The evidence shows that Broadway Concrete made $65,472 in gross salary payments to defendant Rocco Mazzaferro between October 2007 and July 2008 in connection with his alleged work as a mason at 77 Hudson Street.  In addition, the company made payments of $58,933.52 to Plasterers and Cement Masons AFL-CIO

-2-

Local 780 ("Local 780") on Rocco Mazzaferro's behalf for his alleged work at 77 Hudson Street.   There are numerous witnesses that will testify, however, that defendant Rocco Mazzaferro never worked as a mason at the 77 Hudson Street project.[1]   The fraud was furthered by the transmission of weekly wires, i.e., facsimiles sent by defendant Eric Haynberg, one of the Broadway Concrete timekeepers at 77 Hudson Street.   These facsimiles were sent  from the construction site in New Jersey to the payroll department at Tri-State, the parent company of Broadway Concrete in New York City, and included the purported hours worked by defendant Rocco Mazzaferro.  Defendant Anselmo Genovese's uncle- -  defendant Vincenzo Genovese - - did some work under defendant Rocco Mazzaferro's name, however, the shop steward records demonstrate that Vincenzo Genovese worked for substantially less hours than the number of hours attributed to Rocco Mazzaferro on the timekeeper reports.   Ultimately,  Broadway Concrete was defrauded of the sum of $41,800 in salary plus $36,214 in contribution payments- - representing payments for hours that neither defendant Vincenzo Genovese nor defendant Rocco Mazzaferro performed any work at the 77 Hudson Street project.

The payroll checks issued by Broadway Concrete were either cashed at or deposited into the joint account of Rocco Mazzaferro and his wife at Commerce Bank (which later became TD Bank) or Chase Bank.

---

[1] During one of the weeks that Mazzaferro was reported to have worked at the 77 Hudson Street project, there were charges on his credit card indicating that he was actually in Florida.

**Conspiracy (18 U.S.C. § 371)(Ct 13) and Theft/Embezzlement from Employee Benefit Funds (18 U.S.C. § 664)(Ct 14)**

(Rocco Mazzaferro - No-Show Job as a Mason)

As a result of the hours falsely reported to Local 780 on his behalf, defendant Rocco Mazzaferro qualified for, and received, family health care benefits, to which he was not entitled from the Local 780 Benefit funds.  In particular, in 2009, Local 780 paid Empire Blue Cross/Blue Shield and Emblem Health the sum of approximately $12,934.96 to cover the Mazzaferro family.[2]

In addition, Rocco Mazzaferro received a vacation check in the gross amount of $7,224 from Local 780 due to his alleged work as a mason at the 77 Hudson Street project to which he was not entitled.   The evidence shows that defendants Anselmo Genovese, the Project Manager, and Pasquale Zinna, the Project Superintendent, facilitated the deception regarding Rocco Mazzaferro's purported work at 77 Hudson Street.

**Conspiracy (18 U.S.C. § 371)(Ct 15) and Theft/Embezzlement from Employee Benefit Funds (18 U.S.C. § 664)(Ct 16)**

Vincenzo Genovese - Pension Benefits

Defendant Vincenzo Genovese was retired as a Local 780 mason.   As a retired member he was not permitted to receive pension benefits during any month that he worked more than 39 hours.   Nevertheless, the evidence shows that Vincenzo Genovese was paid a total of $9,210 in pension benefits for five separate months (between October

---

[2]  The Mazzaferro family took advantage of this coverage, in 2009, Empire was billed $640 by medical providers, on which they paid $318; while Emblem Health was billed $29,911.30, on which they were paid $6,338.74.

-4-

2007 and June 2008) in which he worked more than 39 hours under the name of defendant Rocco Mazzaferro at the 77 Hudson Street project.   The evidence shows that defendants Anselmo Genovese and Pasquale Zinna, facilitated  the deception that allowed Vincenzo Genovese to work under Rocco Mazzaferro's name.

**Conspiracy (18 U.S.C. § 1349) (Ct 17) and Wire Fraud (18 U.S.C. § 1343)(Cts 18-29)**
(Scheme to Defraud Broadway Concrete - - Janeen Zinna No-Show Job)

Broadway Concrete made $ 221,197 in gross salary payments to defendant Janeen Zinna, the wife of defendant Pasquale Zinna, and further made $182,954 in contributions to the Local 780 funds on her behalf as a result of her alleged work as a mason at the 77 Hudson Street project.   There are numerous witnesses that will testify that Janeen Zinna did not work as a mason at the 77 Hudson Street project.   Accordingly, Broadway Concrete was defrauded of this money by false and fraudulent pretenses.  The fraud was furthered by the transmission of weekly wires, i.e., facsimiles sent by defendant Eric Haynberg from the construction site in New Jersey to the payroll department at Tri-State, in New York City, which set forth the purported hours worked by Janeen Zinna.   The payroll checks issued by Broadway Concrete were deposited into the joint account of defendants Janeen and Pasquale Zinna at Commerce Bank, which later became TD Bank.

Handwriting exemplars were obtained from defendants Pasquale and Janeen Zinna and an analysis conducted by the Internal Revenue Service, Criminal Investigation, National Forensic Laboratory of several Commerce Bank/TD Bank deposit slips, which included the deposit of certain checks issued by Cement Masons Local 780 and

Broadway Concrete payable to Janeen Zinna.  The conclusion of Joseph Mongelluzzo, the Forensic Document Analyst, was that Patty Zinna wrote the handwritten entries on these deposit slips.  Several Broadway Concrete checks were deposited into Janeen Zinna's personal bank account at First Hope Bank.   These checks were also submitted to the IRS for a handwriting analysis.   Joyce Lauterbach, Forensic Document Analyst concluded, among other things,  that defendant Janeen Zinna was probably the author of the endorsements on the vast majority of these checks.

**Conspiracy (18 U.S.C. § 371)(Ct 30) and Theft/Embezzlement from Employee Benefit Funds (18 U.S.C. § 664)(Ct 31)**
(Janeen Zinna - No-Show Job as a Mason)

The evidence shows that defendant Janeen Zinna personally applied for, and signed documents to obtain,  membership in the Plasterers and Cement Masons AFL-CIO Local Union 780 in September 2006.  As part of the application process she submitted birth certificates for herself and her three children, a designation of beneficiary form, and a copy of her driver's license and social security card.   The handwriting examiner concluded that defendant Janeen Zinna wrote the check to the Cement Mason's Local 780 on September 28, 2006  in payment for her union book.  As a result of the fictitious hours reported to Local 780 on her behalf, she qualified for, and received, family health care benefits, to which she was not entitled from the Local 780 Benefit funds.[3]  In particular,

---

[3]   The evidence shows that Janeen Zinna was also falsely reported to have worked as a mason on several Broadway Concrete projects that took place in N.Y.C. in 2006.  This resulted in Local 780 paying $20,971.70 in 2007 for health coverage for the Zinna Family.  During 2007, the Empire BC/BS was billed $6,999, on which they paid $3,368.74 to medical providers.

in 2008, Local 780 paid Empire Blue Cross/Blue Shield the sum of $21,986.44 to cover the Zinna family.  The following year, Local 780 paid $18,357.78 to Empire BC/BS and to Emblem Health on behalf of the Zinna family.[4]

In addition, Janeen Zinna was issued more than $44,000 in vacation checks from the Local 780 benefit funds during 2007 and 2008 as a result of her alleged employment as a mason at 77 Hudson Street.[5]

**Social Security Disability Insurance Fraud ( 42 U.S.C. § 408 )(Ct  32)**
(Scheme to Social Security - - Concealing Patty Zinna Employment)

In February, 1999, defendant Pasquale Zinna applied to the Social Security Administration ("SSA") for disability payments based upon a back injury that occurred in March 1996.  Pasquale Zinna claimed to be unable to work due to this condition.  From at least as early as September 2005 through May 2009, defendant Pasquale Zinna received more than $100,000 in disability benefits payable to himself and his three children[6] while concealing from, and failing to report to,  the SSA that he not only was able to work, but was in fact engaged in employment and substantial work activity for

---

[4]  The Zinna family took advantage of this coverage, in 2008, Empire was billed $9,226 by medical providers, on which they paid $3,131.43.   In 2009, Empire and Emblem were billed a combined $21,968.25 by medical providers, on which they paid $6,406.92.

[5]  The following vacation checks were issued to Janeen Zinna: 2/1/07- $6,768 gross ($6,338 net); 8/1/07 - $6,240 gross ($5,982 net); 2/1/08 -$14, 856 gross ($14,598 net); 8/1/08- $16,170 gross ($15,912 net).

[6]  More specifically, SSA paid a total of $71,828.10 in disability payments to defendant Pasquale Zinna and a total of $32,361 for the benefit of his three children with defendant Janeen Zinna.

Broadway Concrete as a Project Superintendent on construction projects in New York and New Jersey.   Defendant Pasquale Zinna concealed his employment from the SSA by arranging to have his paychecks from his position at Broadway Concrete made payable to his wife defendant Janeen Zinna[7] and at least one other individual.

## Structuring Financial Transactions (31 U.S.C. § 5324(a)(3))(Ct 33)

During the period October 23, 2006 through January 11, 2008, defendant Pasquale Zinna deposited 41 checks[8] issued by Broadway Concrete payable to defendant Anselmo Genovese, totaling $435,231, into his joint account at Commerce/TD Bank with his wife defendant Janeen Zinna.   During the period June 16, 2006 through July 18, 2008, defendant Pasquale Zinna deposited 311 checks issued by Broadway payable to his wife Janeen Zinna into the joint account at Commerce/TD Bank[9] in furtherance of, and representing proceeds of, the wire fraud, employee benefit embezzlement, and Social Security schemes.   Thereafter, every few days, Pasquale Zinna would make cash withdrawals at various branches of the bank.   In particular, on approximately 89 occasions during the period December 11, 2006 and March 20, 2008, Pasquale Zinna

---

[7]   The Broadway Concrete payments issued in Janeen Zinna's name for defendant Pasquale Zinna's work as Project Superintendent were reflected on Form 1099s.   This money was in addition to the paychecks issued in her name for her purported work as a mason which were reflected in W-2s and did not represent hours worked by either her or her husband.

[8]   From October 2006 through April 2007, these checks were consistently in the amount of $5,000; from April 2007 through January 2008 the checks were primarily in the amount of $23,094.69.

[9]   Several vacation checks from Local 780 payable to defendant Janeen Zinna were also deposited into this account.

withdrew cash in amounts below the $10,001 filing requirement, as part of a pattern of illegal activity involving at least $408,000, for the purpose of evading the reporting requirements to which the financial institutions were subject.

## ARGUMENT

## I.   THE DEFENDANTS' MOTION FOR BILL OF PARTICULARS SHOULD BE  DENIED.

Defendants seek a bill of particulars regarding a broad range of evidentiary issues with respect to Indictment, Crim. No. 11-165.   Defendants contend that they are entitled to particulars in order to prepare their defenses.  Given the detailed nature of the allegations in the 35-page Indictment and the voluminous discovery that has been provided in this case, the requests should be denied.  United States v. Urban, 404 F.3d 754, 772 (3d Cir. 2005) ("access to discovery further weakens the case for a bill of particulars").

This Court's discretion to order a bill of particulars should be informed by the purpose, scope, and function of that mechanism. "The purpose of a bill of particulars is to inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense."  Urban, 404 F.3d at 771-72 (internal citations omitted).   Accordingly, a bill of particulars should issue "only where an indictment fails to perform these functions, and thereby significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." Id. (citing United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir. 1989) and United States v. Addonizio, 451 F.2d 49, 63-64 (3d Cir. 1971)); United States v. Rutkoske, 394 F. Supp. 2d 641, 648 (S.D.N.Y. 2005) ("A bill of particulars is appropriate only where the

indictment is so general or vague that a defendant is not advised of the specific acts of which he is accused.").  "The ultimate test in deciding whether a bill of particulars should be ordered is whether the information sought is necessary, as opposed to helpful, in preparing a defense."  United States v. Young & Rubicam, 741 F. Supp. 334, 349 (D. Conn. 1990).

Here, the indictment is sufficiently specific to satisfy Rule 7(c)(1) and the pertinent constitutional provisions.  Each of the conspiracy counts (Cts 1, 13, 15, 17and 30) detail the coconspirators, the entities, the victim, the time frame of the conspiracy, the object of the conspiracy, the manner and means of each of the conspiracies, and in the case of the Section 371 conspiracies set forth a significant number of overt acts which provide factual detail far beyond the bare bones minimum required under Rule 7(c)(1). Moreover, the substantive wire fraud and embezzlement counts which correspond to the conspiracy counts incorporate many of those details as well as adding the specific dates of the criminal conduct, and in the case of the wire frauds, a description of the alleged wire communications.

Counts 32 and 33 of  the Indictment also have more than sufficient detail to permit defendants Pasquale Zinna and/or Janeen Zinna to understand and defend against the charges therein.  For example, Count 32 (Social Security Fraud) sets forth the date(s) of the charged criminal activity, the participants in the criminal activity, the amount of improper Social Security disability benefits the defendants received, and the dates and description of the particular fraudulent statements made by defendant regarding his

inability to work.   Moreover, with regard to Count 33, the indictment details, among other things,  the time frame of the structuring activity, the account in which the structuring activity occurred, the number of alleged structuring transactions, and the amount of money involved in the structuring activity.  Given that wealth of specificity beyond a recitation of the statutory elements, this Court should decline to afford additional details by way of a bill of particulars.

Additionally, the discovery already provided and to be provided in this case obviates the need for any bill of particulars.  While a bill of particulars has only a limited function (i.e., to clarify the essential charges of the indictment, and does not substitute for discovery), the provision of discovery in compliance with the rules may eliminate the need for any bill of particulars.  "Full discovery . . . obviates the need for a bill of particulars."  United States v. Giese, 597 F.2d 1170, 1180 (9th Cir. 1979); accord United States v. LBS Bank-New York, Inc., 757 F. Supp. 496, 507 (E.D. Pa. 1990).  If the defendant can derive sufficient information to prepare a defense from the indictment and discovery, then there is no need for the bill to issue.  United States v. Boffa, 513 F. Supp. 444, 485 (D. Del. 1980), aff'd in part, rev'd in part on other grounds, 688 F.2d 919 (3d Cir. 1982); United States v. Deerfield Specialty Papers, 501 F. Supp. 796, 810 (E.D. Pa. 1980).

Here, the defendants have been supplied with the "central facts" of this case via the details set forth in the indictment and the substantial discovery that has been produced to date.  See United States v. Vastola, 670 F. Supp. 1244, 1269 (D.N.J. 1987).  In

particular, on April 8, 2011, a representative group of defense counsel, including Evan

Lipton, Esq. of the Gerald Shargel Law firm, counsel for defendant Anselmo Genovese,

Maurice Sercarz, Esq., counsel for defendant Pasquale Zinna, and Eric Franz, Esq.,

counsel for defendant Eric Haynberg, traveled to the offices of the Department of Labor,

Office of Inspector General, in Mountainside, New Jersey to examine twenty-three boxes

of records that had been acquired by the Department of Labor during the course of the

investigation.  Following a brief inspection, counsel advised that the defendants  wished

to obtain copies of the *entire* contents of eighteen of the twenty-three boxes.

  The boxes that counsel wished to copy contained thousands of pages of documents

(including payroll/timekeeper records, union membership records, and bank account

records) that required redaction as they contained personal information such as social

security numbers, phone numbers, bank account information, and addresses of hundreds

of individuals who had no involvement in the instant criminal case.  The government

estimates that 40,000 pages were scanned into the computer.  Following the scanning

process, the appropriate redactions were made.   Thereafter, as per the agreement among

the parties, compact discs containing the scanned and redacted documents were turned

over to Gerald Shargel, Esq. to be shared and/or copied with the remaining defense

counsel.  The dates of disclosure were April 25, 2011 and April 27, 2011.  Thereafter, a

small quantity of documents (roughly two hundred pages) - - that were inadvertently not

scanned in the first instance - - were contained in a third compact disc sent to defense

counsel on May 3, 2011.

In addition to the discovery set forth above, the government provided indexes generally describing the nature of the documents contained on the compact discs, including references to the box/redwell in which the documents were originally stored. On or about April 19, 2011, the government also sent defense counsel individual packets of discovery which included, where applicable,  criminal history records, pre-arrest interview reports, arrest reports, handwriting expert reports, Social Security Administration records, and personal tax returns.

There is no question that the answers to the vast majority of the questions posed by defense counsel are already contained in a fair reading of the indictment, in the documents furnished in discovery, and in the government's detailed Statement of Facts, above.   Notably,  the documents contained on all of the provided compact discs can easily be made searchable by copying the PDF files on to a local hard drive, opening the PDF file in Adobe Acrobat PRO, and using the OCR Text Recognition feature. Moreover, it is anticipated that the government will supply substantial additional discovery – consisting largely of Jencks and Giglio material – to the defense as trial approaches as well as identify the government's  trial exhibits.  Further, the government has offered to meet with defense counsel (and their clients) on an individual basis to assist them in focusing on discovery that the government believes is pertinent to the charged offenses.   Where, as here, the government has provided extensive discovery, and will provide substantial additional discovery in time for its effective use at trial, a bill of particulars is unnecessary.  See LBS Bank-New York, Inc., 757 F. Supp. at 507.

-14-

Even if a bill of particulars were warranted, its scope should be very narrow, and should not provide the extensive information demanded by the defendants here.  Rather, it should "give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation."  United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985); see also United States v. Cisneros, 26 F. Supp. 2d 24, 55-56 (D.D.C. 1998).  A proper and sufficient bill need present only the broadest outline of the government's case, so as not to unnecessarily restrict the government's trial evidence.  This rule exists to protect against "the unfairness that can result from forcing the Government to commit itself to a specific version of the facts before it is in a position to do so."  Rosa, 891 F.2d at 1066; Boffa, 513 F. Supp. at 485 ("One of the main policy reasons for restricting [the] applicability [of a bill of particulars] is to avoid 'freezing' the Government's evidence in advance of trial.").

The functions of a bill of particulars are "more akin to the functions of an indictment than to discovery."  Smith, 776 F.2d at 1111.  It is "firmly established" that "a defendant is entitled neither to a wholesale discovery of the Government's evidence. . . nor to a list of the Government's prospective witnesses."  Addonizio, 451 F.2d at 63-64 (internal citations omitted); see also Eufrasio, 935 F.2d at 575; LBS Bank-New York, Inc., 757 F. Supp. at 507.   Indeed it is evident that a number of the requested bill of particulars are designed to prematurely elicit the names of government witnesses.  See, e.g. ("identify the names of the timekeepers who were instructed to falsely report that

-15-

Janeen Zinna had worked for specific hours," "provide the identity of the shop steward who distributed to Vincenzo Genovese paychecks in the name of Rocco Mazzaferro,"

A defendant may not present a "set of detailed interrogatories in the guise of a bill of particulars." United States v. Kenny, 462 F.2d 1205, 1212 (3d Cir. 1972); United States v. McDade, 827 F. Supp. 1153, 1187-88 (E.D. Pa. 1993) (internal citations omitted); see United States v. Armocida, 515 F.2d 49, 54 (3d Cir. 1975) (defendant's "request for the 'when, where and how' of any overt acts not alleged in the indictment was tantamount to a request for 'wholesale discovery of the Government's evidence,' which is not the purpose of a bill of particulars"); see also United States v. Traitz, Crim. A. No. 99-003, 1999 WL 551924, at *2 (E.D. Pa. July 15, 1999).   Further,  "(t)he government need not disclose the specific role[s] played by each defendant in the conspiracy, or the particular acts each defendant is alleged to have participated in, had knowledge of, or for which he is being held responsible."  United States v. Jones, Crim. A. No. 88-1075, 1986 WL 275, at *2 (S.D.N.Y. May 28, 1986) (citations omitted); United States v. Nachamie, 91 F. Supp. 2d 565, 574-76 (S.D.N.Y. 2000) (denying request for particulars about "role of [the defendant] in each . . . count[]"; "[t]his request is denied because [the defendant's] role is sufficiently described in the Indictment to provide adequate notice of the pending charges").   For all the foregoing reasons, the defendants' requests for a bill of particulars should be denied.

## II.   DEFENDANT ANSELMO GENOVESE'S  REQUEST FOR CONSOLIDATION OF THE TWO INDICTMENTS SHOULD BE DENIED AS IT WOULD VIOLATE THE RULES GOVERNING JOINDER

Defendant Anselmo Genovese contends that the two Criminal Indictments, Crim. Nos.  11-164 and 11-165 should be consolidated for trial.  The facts of these cases, analyzed in light of the existing law, demonstrate that these two criminal cases were properly indicted separately under the rules governing joinder.

Pursuant to Federal Rule of Criminal Procedure 13 separate criminal cases may be tried together "if all offenses and all defendants could have been joined in a single indictment or information."   Under Fed. R. Crim. P. 8(a),  an  indictment may charge a defendant with two or more offenses if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."   See Fed. R. Crim. P. 8(a).  Moreover, an indictment may charge two or more defendants if they are "alleged to have participated in the same act or transaction, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.   All defendants need not be charged in each count."   See Fed. R. Crim. P. 8(b).

Most courts have held that Rule 8(b) applies exclusively to issues of joinder in multi-defendant cases and that Rule 8(a) applies only in cases involving a single defendant charged with multiple offenses.   See United States v. Irizarry, 341 F.3d 273, 287 (3d Cir. 2003).   However, the Third Circuit did suggest in United States v. Eufrasio, 935 F.2d 553, 570 (3d Cir. 1991), that "contrary to the jurisprudence in other circuits,

-17-

when a joinder of offenses charged against the same defendant is challenged, the literal meaning of the Rule requires the application of Rule 8(a), irrespective of whether multiple defendants are involved in the case."  Eufrasio, 935 F.2d at 570 n.20.   As noted in Eufrasio, there is a difference between the two standards, "Rule 8(a) is more permissive than Rule 8(b) because Rule 8(a) allows joinder on an additional ground, i.e., when the offenses "are of the same or similar character."   Eufrasio, at 570 n. 20; see United States v. Jimenez, 513 F.3d 62, 82-83 (3d Cir. 2008); United States v. Heilman, 377 Fed. Appx. 157, 202,  fn. 34 (3d Cir. 2010).   In the present case, joinder of the two indictments would be inappropriate under either standard.

In the instant case, the charges against defendant Anselmo Genovese in Crim. No. 11-164 ("Laborer's Indictment") and Crim. No. 11-165 ("Mason's Indictment") are not "of the same or similar character."  In applying the "same or similar character" standard, the Courts have allowed the offenses to be joined when "the two counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps."  See United States v. Lindsey, 782 F.2d 116 (8th Cir. 1986)(joinder of count charging possession of a 45-caliber pistol with count charging possession of a 20-gauge shotgun 17 months later was not improper); United States v. Taken Alive, 513 F.3d 899, 903 (8th Cir. 2008)(joinder of two counts involving assaults of two different persons was proper where assaults were similar in nature and occurred only 30 days apart); United States v. Scott, 266 Fed. Appx. 206, 2008 W.L. 490600 (3d Cir. 2008)(drug and weapons charges stemming from one arrest were similar to drug charges

stemming from activities with his co-defendant and therefore joinder was proper); United States v. Hudgins, 338 Fed. Appx. 150, 2009 WL 2219240 (3d Cir. 2009)(charges against defendant from one robbery were properly joined with charges against him arising out of a second robbery committed six weeks later as they were substantially similar and a common plan existed between them).

In the case at bar, although the charged conduct in the two Indictments occurred roughly during the same period and during the same construction project, the offenses charged are not similar.   In particular, the criminal conduct charged in the  Laborer's Indictment involved a conspiracy to bribe a union official in order to evade the terms of the collective bargaining agreement.   In contrast, the Mason's Indictment involved a series of wire, pension, and Social Security frauds which victimized Broadway Concrete, a different union and a government agency.   In addition, the Mason's Indictment charges five defendants in addition to defendant Anselmo Genovese who had no connection to the union bribery scheme charged in the Laborer's Indictment.

Moreover, the evidence between the two Indictments does not significantly overlap.   Indeed, the government estimates that the trial of the Laborer's Indictment would require the testimony of approximately seven witnesses and the admission of hundreds of documents that have nothing to do with the Mason's Indictment, adding potentially two to three weeks to the expected length of the trial of the already much more complex and extensive Mason's Indictment.

Further, joinder would be inappropriate pursuant to Rule 8(b) as the crimes charged in the Laborer's Indictment are not within the "same series of acts or transactions" as the crimes charged in the Mason's Indictment.   Joinder is proper under Rule 8(b) when two or more person's criminal acts are "unified by some substantial identity of facts and participants, or arise out of a common plan or scheme."  United States v. Valdes, 2006 WL 738403, at *10 (S.D.N.Y. 2006).  For example, in United States v. Biaggi, 909 F.2d 662 (2nd Cir. 1990), the Second Circuit held that the joinder in a multiple-defendant case of two counts which charged the defendant with the extortion of two separate victims was proper under Rule 8(b) as the defendant used one victim as the means for obtaining benefits from another victim, and therefore, extortions were part of the same series of acts or transactions.

Here, the two Indictments are not intertwined.  To determine if joinder is proper, a district court looks to the indictment.  See United States v. Thornton, 1 F.3d 149, 153 (3d Cir. 1993).[10]   The test is simple in conspiracy cases:  so long as the indictment "[c]harges all the defendants with one overall count of conspiracy," joinder is proper under Rule 8(b).  United States v. Lane, 474 U.S. 438, 447 (1986); see also, e.g., Thornton, 1 F.3d at 153 (noting that "all three defendants were charged with participation in a single

---

[10]   Defendant Anselmo Genovese argues that the cases should be consolidated because the government has treated the two cases as joined in a single press release and in discovery matters. Suffice it to say, that the government's consolidation of the discovery process to accommodate the defendants and the Court have no bearing on the legal issue of joinder.  Moreover, defendant Anselmo Genovese's reference to the construction of unrelated indictments in and outside of this jurisdiction have even less relevance to the issue before this Court concerning the consolidation of disparate charges for purposes of trial.

overarching drug conspiracy," which was "sufficient for joining these defendants in a single trial").  Moreover, when a conspiracy is alleged, all substantive counts that charge conduct arising out of the conspiracy are also properly joined:  "'joinder . . . of a conspiracy count and substantive counts arising out of the conspiracy is permitted, since the claim of conspiracy provides a common link, and demonstrates the existence of a common scheme or plan.'"  Irizarry, 341 F.3d at 289 (quoting United States v. Somers, 496 F.2d 723, 729-30 (3d Cir. 1974) (emphasis original in Irizarry and Somers, quotation marks and internal alterations from Somers omitted).   In contrast to the cases cited above, the five remaining defendants in the Mason's Indictment have no involvement in the conspiracy or the substantive counts charged in the Laborer's Indictment.   As such, there is no evidence demonstrating an overlap of participants or a common scheme or plan between the two Indictments.

Moreover, even if joinder were proper under Rule 8, this Court would have to factor in Fed. R. Crim. P. 14.  "If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14.  The rule commits the relief to be granted, if any, "to the sound discretion of the district courts."  Zafiro v. United States, 506 U.S. 534, 541 (1993).   In the case at bar, defendant Anselmo Genovese has failed to present any evidence that the five other defendants in the Mason's Indictment support the consolidation that he seeks.   Given that consolidation will result in the presentation of additional witnesses and documents at trial

-21-

that have nothing to do with those defendants thereby adding to the length and expense of their trials, it is quite likely that one or more of these defendants would oppose such consolidation.   Moreover, one or more of those defendants might be opposed to the consolidation given the fact that the Laborer's Indictment involves the crime of bribing a union official and the use of a government cooperator, which could conceivably reflect poorly on them by virtue of the joint trial.   At a minimum, this Court should inquire of each of the five defendants to find out their positions on consolidation.   Further, if they consent or do not oppose the consolidation, each of those defendants should be asked to 1) waive any objection to consolidation they might have had on joinder or prejudice grounds and 2) agree not to seek severance based upon the consolidation of the charges against Anselmo Genovese.

## III.   DEFENDANT JANEEN ZINNA'S MOTION FOR SEVERANCE SHOULD BE DENIED BECAUSE SHE HAS NOT MET HER HEAVY BURDEN OF SHOWING A CLEAR AND SUBSTANTIAL PREJUDICE TO A SPECIFIC TRIAL RIGHT.

Defendant Janeen Zinna seeks severance of the charges against her on two grounds.  First, she claims that her husband defendant Pasquale Zinna would be willing to testify on her behalf at a separate trial.   Second, she asserts that a joint trial would present a conflict between her right to testify in her own defense and her spousal privilege not to testify against her husband.

-22-

### A.    The Legal Standards Governing Severance Under Rule 14(a)

"If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14.  The rule commits the relief to be granted, if any, "to the sound discretion of the district courts."  Zafiro v. United States, 506 U.S. 534, 541 (1993).  It is a "fundamental principle that the federal system prefers 'joint trials of defendants who are indicted together.'"  United States v. Urban, 404 F.3d 754, 775 (3d Cir. 2005) (quoting Zafiro, 506 U.S. at 537).  See also United States v. Sandini, 888 F.2d 300, 306 (3d Cir. 1989) ("in cases of defendants jointly indicted ordinarily there should be a single trial").  Indeed, "[j]oint trials 'play a vital role in the criminal justice system.'"  Zafiro, 506 U.S. at 537 (quoting Richardson v. Marsh, 481 U.S. 200, 209 (1987)).   This is true for several reasons.

First, joint trials promote systemic judicial efficiency.  See, e.g., United States v. Lane, 474 U.S. 438, 449 (1986) (noting that Supreme Court has "long recognized that joint trials conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial"); Eufrasio, 935 F.2d at 568 ("Ordinarily, defendants jointly indicted should be tried together to conserve judicial resources."); United States v. Blassingame, 197 F.3d 271, 286 (7th Cir. 1999) (systemic interest in joint trials includes "reducing the waste of judicial and prosecutorial time").

Second, "[i]n joint trials, the jury obtains a more complete view of all the acts underlying the charges than would be possible in separate trials.  From such a perspective, it may be able to arrive more reliably at its conclusions regarding the guilt or innocence of a particular defendant and to assign fairly the respective responsibilities of each defendant in the sentencing."  Buchanan v. Kentucky, 483 U.S. 402, 418 (1987).  This "more complete view" in turn "serve[s] the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."  Richardson, 481 U.S. at 210; see also, e.g., United States v. Sophie, 900 F.2d 1064, 1083 (7th Cir. 1990) (joint trials have the benefit of presenting the "total story" to the jury as opposed to bits and pieces being presented to several juries).

Joint trials of co-conspirators are particularly favored because only with a single trial can the jury see the complete picture of the scheme, thus "enabling more accurate assessment of relative culpability – advantages which sometimes operate to the defendant's benefit."  Richardson, 481 U.S. at 210, see also, e.g., United States v. Voigt, 89 F.3d 1050, 1094 (3d Cir. 1996).  This is why the Third Circuit has expressed a preference in conspiracy cases "to have all the parties tried together so that the full extent of the conspiracy may be developed."  United States v. Provenzano, 688 F.2d 194, 199 (3d Cir. 1982); accord United States v. Dickens, 695 F.2d 765, 778 (3d Cir. 1983).

Third, separate trials often "randomly favor[] the last-tried defendants who have the advantage of knowing the prosecution's case beforehand."  Richardson, 481 U.S. at 210.  This "advantage" is sometimes only tactical, but sometimes it is far more sinister.

-24-

Separate trials "requir[e] victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying."  Id.

For all these reasons, Rule 14 "places the burden of showing prejudice from the joinder on the defendant seeking severance."  Eufrasio, 935 F.2d at 568 (citing De Peri, 778 F.2d at 983).  Indeed, due to the powerful interests favoring joint trials, "defendants have a heavy burden in gaining severance."  United States v. Quintero, 38 F.3d 1317, 1343 (3d Cir. 1994); see also United States v. Console, 13 F.3d 641, 655 (3d Cir. 1993) (defendant seeking severance bears "a heavy burden").

This "heavy burden" is no easy lift:  defendants must prove "that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial."  Urban, 404 F.3d at 775; see also United States v. Lore, 430 F.3d 190, 205 (3d Cir. 2005); United States v. Palma-Ruedas, 121 F.3d 841, 854 (3d Cir. 1997).  Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro, 506 U.S. at 539 (emphasis added).

This is eminently not an "if prejudice, then severance" causation analysis.  In fact, the Supreme Court has held explicitly that even a showing of some prejudice is insufficient to justify severance:  "Rule 14 does not require severance even if prejudice is shown."  Id. at 538-39.  Instead, as noted above, to obtain a severance, the defendant must "show facts demonstrating that he will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial."  United States v. Rucker, 596 F.2d 899, 902 (2d Cir.

1978).  The defendant must prove to the Court that a failure to sever would result in a "manifestly unfair trial, beyond a mere showing that he would have had a better chance of acquittal with separate trials."  Gov't of Virgin Islands v. Sanes, 57 F.3d 338, 341-42 (3d Cir. 1995).  See also United States v. Liveoak, 377 F.3d 859, 864 (8th Cir. 2004) ("To grant a motion for severance, the necessary prejudice must be severe or compelling") (quotation marks omitted); United States v. Saadey, 393 F.3d 669, 678–79 (6th Cir. 2005) (defendants must show "compelling, specific, and actual prejudice" from joinder); United States v. Spitler, 800 F.2d 1267, 1271 (4th Cir. 1986) (requiring defendant to sustain the "extremely difficult burden" of demonstrating such substantial prejudice that he would in effect be denied a constitutionally fair trial).  As the Fifth Circuit has put it, the "defendant seeking severance must demonstrate a specific and compelling prejudice that resulted in an unfair trial and such prejudice must be of a type against which the trial court was unable to afford protection."  United States v. Causey, 185 F.3d 407, 416 (5th Cir. 1999).

### B.  Defendant Janeen Zinna has failed to Demonstrate that her Husband's Alleged Willingness to Testify at a Separate Trial Warrants Severance

In considering a request for severance on the ground of a codefendant's possible exculpatory testimony, the Court must analyze "1) the likelihood of co-defendant's testifying; 2) the degree to which such testimony would be exculpatory; 3) the degree to which the testifying codefendants could be impeached; and 4) judicial economy."  See

United States v. Boscia, 573 F.2d 827, 832 (3d Cir. 1978).   These factors do not support defendant Janeen Zinna's severance motion.

First, she has not made a strong showing that her husband will testify on her behalf at a separate trial.   The affidavit of defendant Pasquale Zinna states that he will be able to testify "once the issue of my guilt or innocence is resolved."   Mr. Zinna has indicated his intention to invoke his Fifth Amendment right not to testify at his own trial.   Certainly, he would also have Fifth Amendment concerns following trial 1) if he is convicted, and pending sentence, and 2) if he appeals his criminal conviction and seeks a retrial.   Thus, it is not at all clear that Mr. Zinna would be available and willing to testify at a separate trial of his wife which followed his own.

Second, the showing of the exculpatory nature of the desired testimony is weak. Defendant Pasquale Zinna states only that his testimony would include facts addressing his wife's knowledge and intent to commit the charged crimes.  According to defendant Janeen Zinna this is especially important because the indictment is virtually devoid of allegations that she took any affirmative acts to further the charged crimes.   This characterization of the indictment and the government's proofs is incorrect.   For example, in Count 17 charging Conspiracy to Commit Wire Fraud, defendant Janeen Zinna is specifically charged with the following conduct, among other things, 1) traveling to the offices of Local 780 in Whitestone, New York to complete the necessary paperwork for membership in Local 780 ( ¶ 7) and  2) depositing Broadway checks issued in her name into bank accounts (¶ 10).   Further, in Count 30 charging Conspiracy to

Embezzle 780 Vacation and Medical Benefits from Local 780, defendant Janeen Zinna is specifically alleged to have 1) received and deposited vacation benefit checks attributable to her work as a mason (¶ 6) and 2) obtained medical services pursuant to a health care plan paid for by the Local 780 Benefit Funds (¶ 7, ¶ 8(d)).   Moreover, it goes without saying that the nature and extent of the compelling evidence that the government has against defendant Janeen Zinna is not fully expressed in the Indictment.

Third, there is no question that defendant Pasquale Zinna's testimony regarding his wife's "knowledge and intent" could be impeached on the basis of bias.   According to defendant Janeen Zinna, her husband's testimony would be based solely on marital communications to which only he and his wife were privy.   In other words, there is no independent corroboration for any of his expected trial testimony.   Under these circumstances, the government would be able to present a strong argument that defendant Pasquale Zinna's favorable testimony for his wife was motivated by his desire 1) to protect his wife from incarceration, and 2) to prevent his children from being deprived of both parents should his testimony occur following his own conviction at trial.

Fourth, considerations of judicial economy weigh strongly against separate trials. Indeed, there is a reasonable assurance that defendant Janeen Zinna will get a fair trial even if her trial is not severed on the basis of her husband's alleged willingness to provide testimony on her behalf.   This is true because it is highly unlikely that her husband will waive his Fifth Amendment rights to testify on her behalf.   Further, the nature of his

proposed testimony is not significant in light of the evidence against her and could be easily impeached.

Moreover, the "presumption in favor of joint trials operates most strongly in conspiracy cases." United States v. Gomez, 111 F. Supp. 2d 571, 574 n.6 (E.D. Pa. 2000). In fact, the Supreme Court has stated that "[r]arely, if ever, will it be improper for co-conspirators to be tried together." Schaffer v. United States, 362 U.S. 511, 512-13 (1960). See also, e.g., United States v. Fernandez, 388 F.3d 1199, 1242 (9th Cir. 2004) ("a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials").

### C. Defendant Janeen Zinna has failed to Demonstrate that she is Entitled to Severance Due to a Conflict between her Right to Testify and Spousal Privilege Not to Testify Against Her Husband

Defendant Janeen Zinna argues that a joint trial would put her in the position of having to chose between her constitutional right to testify on her own behalf and waiving her spousal privilege not to testify against her husband. The Constitution guarantees a criminal defendant a fundamental right to testify at trial. See Rock v. Arkansas, 483 U.S. 44, 51 (1987); United States v. Leggett, 162 F.3d 237, 245 (3d Cir. 1998). On the other hand, the privilege against adverse spousal testimony prevents one spouse from being compelled to testify against the other and rests with the testifying spouse who may chose to waive it. See United States v. Ammar, 714 F.2d 238, 258 (3d Cir. 1983).

-29-

Defendant Janeen Zinna cites the district court opinion in <u>United States v. Dobson</u>, 2003 WL 22427984 (E.D. Pa 2003)[11] to support her contention that the court must resolve conflicts between the privilege against adverse spousal testimony and the right to testify by granting a severance.   The government submits that this Court should not adopt such a bright-line rule and instead should conduct "a fact sensitive inquiry focused on whether failure to sever creates a serious risk" that one of defendant Janeen Zinna's trial rights will be compromised.   <u>See</u> <u>United States v. Ferrer</u>, 2998 WL 4890034 (M.D. Pa. 2008)(using such an approach and finding facts did not support severance of spouse's trials).  <u>See also</u> <u>United States v. Vaccaro</u>, 816 F.2d 443, 450  (9th Cir. 1987)(finding no error in failing to sever trial of husband and wife absent a showing that spouse's testimony would have ben favorable).

Courts have consistently held that the spousal privilege only applies to testimony that is "adverse" to the other spouse.  <u>See</u> <u>In re Grand Jury</u>, 111 F.3d 1083, 1087  (3d Cir. 1997); <u>United States v. Van Cauwenberghe</u>, 827 F.2d 424, 431 (9th Cir. 1987)(refusing to recognize the spousal privilege where the witness failed to demonstrate that her testimony was adverse to her spouse's interests); <u>In re Martenson</u>, 779 F.2d 461, 464 (8th Cir. 1985)

---

[11]   The <u>Dobson</u> Court relied upon dictum in the <u>Ammar</u> decision which stated that "[a] severance may be granted for a co-defendant spouse, if necessary to protect his or her rights." <u>See</u> <u>Ammar</u>, 714 F.2d at 258.  This dictum did not address the situtation confronted herein where a defendant seeks a severance because testifying on her own behalf would cause her to waive her privilege against adverse spousal testimony.  Rather, it contemplated a scenario where an individual's right to testify would warrant severance if that testimony conflicted with the marital communications privilege, which unlike the adverse spousal privilege cannot be waived.

(privilege is "not available unless the anticipated testimony would in fact be adverse to the non-witness spouse"). Accordingly, the defendant seeking severance should be required to make a specific showing that his or her testimony would in fact would be adverse to their codefendant spouse. See United States v. Ferrer, 2008 WL at *5; United States v. Binns, 2007 WL 120706, at *8 (E.D. Mo. 2007)(denying motion to sever because defendant has made no showing that her testimony would implicate her husband); United States v. Levine, 750 F.Supp. 1433, 1443 (D. Colo. 1990) (denying motion to sever spouses as assertion of prejudice was speculative), affirmed 970 F.2d 681 (10th Cir. 1992). Indeed, a contrary view would result in the automatic severance of virtually every case which involved husband-wife defendants.

In the case at bar, defendant Janeen Zinna has not submitted any affidavit setting forth how her trial testimony would adversely implicate her husband. Indeed, her moving papers state simply that her testimony would "potentially" and "likely" implicate her husband without further elaboration. This speculation is simply not sufficient to justify a separate trial given the interests of judicial economy and the substantial prejudice that must ordinarily be shown to justify severance of coconspirators. Thus, her application should be denied.

## IV.    THE GOVERNMENT'S REQUEST FOR RECIPROCAL DISCOVERY SHOULD BE GRANTED

On or about April 19, 2011, the government sought reciprocal discovery from all six defendants.  The government's right to such discovery is firmly established by Fed. R. Crim. P. 16 (b)(1)(A) and (B).  The former provision allows the government, upon complying with a legitimate request by a defendant for similar material, to

> inspect and copy or photograph books, papers, documents, photographs . . . tangible objects . . . or copies of portions thereof, which are within the defendant's possession, custody, or control and which the defendant intends to introduce as evidence in chief at trial.

Fed. R. Crim. P. 16(b)(1(A).  Rule 16(b)(1)(B) mandates reciprocal discovery of scientific tests.  Under the clear language of this rule, courts uniformly have allowed reciprocal discovery.  See, e.g., United States v. Bump, 605 F.2d 548, 551-52 (10th Cir. 1979) (requiring reciprocal disclosure over defendant's objection that it would violate his constitutional rights); United States v. Sherman, 426 F. Supp. 85, 93 (S.D.N.Y. 1976).

To date, the government has not received any reciprocal discovery from any of the defendants.  Because discovery has been made available upon request to the defendants, the government is entitled, pretrial, to reciprocal discovery under Rule 16(b), and the Court should so direct.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the government respectfully request that the Court rule on the various defense motions as set forth above.


Respectfully submitted,
PAUL J. FISHMAN
United States Attorney


By:   <u>/s Leslie F. Schwartz           </u>
Leslie Faye Schwartz
Assistant U.S. Attorney


Date:  July 1, 2011
       Newark, New Jersey